**Ex Parte Lloyd Edward FRANKS, Applicant.**

**No. 74123.**

Court of Criminal Appeals of Texas.

Dec. 19, 2001.

Lloyd Edward Franks, pro se.

Wayln G. Thompson, Asst. DA, Beaumont, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, WOMACK, KEASLER, HOLCOMB and COCHRAN, J.J., joined.

Serving a life sentence on an aggravated robbery conviction, applicant complains in this habeas corpus proceeding that the government refuses to release him to mandatory supervision. We hold that a life-sentenced inmate is not eligible for release to mandatory supervision.

When applicant committed his crime in 1981, the law governing eligibility for release to mandatory supervision provided that an inmate not under a sentence of death "shall be released to mandatory supervision" when the "calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." *See* Article 42.12, Section 15(c), V.A.C.C.P., (West 1981). This law has not substantively changed since then. *See* Section 508.147(a), Tex. Gov't Code

(providing for release of inmate to mandatory supervision "when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced"). Under a literal reading of this law, it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App. 1991) (judiciary must follow statute's "plain language").[1]

Finally, interpreting the mandatory release statute to mandate a life-sentenced inmate's release to mandatory supervision would also require this Court to perform a legislative function which we decline to do. *See Boykin,* 818 S.W.2d at 785 (our constitution assigns the lawmaking function to the legislature while assigning the law interpreting function to the judiciary). This Court would arbitrarily have to substitute some number of years for a life sentence to make it possible to calculate a mandatory supervision release date. This is the Legislature's job. *See id.*

Habeas corpus relief is denied.

JOHNSON, J., filed a dissenting opinion, in which PRICE, J., joined.

JOHNSON, J., filed a dissenting opinion, in which PRICE, J. joined.

I respectfully dissent. Our rules of statutory construction mandate that where a statute's text is clear and application of the plain language leads to the result intended by the legislature, we must give effect to that plain language. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Where, however, the plain language of the statute is ambiguous or would lead to an absurd result, it is permissible for this Court to look to extra-textual factors to aid in interpretation. *Boykin,* 818 S.W.2d at 785. The majority's ruling, construing Art. 42.12, § 15(c) to bar mandatory supervision in cases of those serving life sentences, leads to an absurd result.

If we assume that those sentenced to life are to be denied mandatory supervision merely because the term "life" makes it mathematically difficult to combine actual time served and good conduct time and achieve a specific eligibility date for release, then we would also have to assume that the legislature intended that those serving sentences of 99 years, the other maximum in the statute, are eligible merely because the court or a jury chose to assess the sentence as a number rather than as a word. That is an absurd result. There is no evidence that the legislature intended to create this anomaly when drafting the mandatory supervision law.

By its plain language, Art. 42.12, § 15(c), does not address how to calculate time or define what constitutes a life sentence under mandatory supervision. It also does not specify whether the method of calculation is the same for mandatory supervision as it is for parole. The language is therefore ambiguous as to those matters. In these circumstances, we may look to extra-textual factors for guidance in determining the statute's meaning. *Boykin,* 818

---

1. The government has never released life-sentenced inmates to mandatory supervision. During this time the Legislature has amended the mandatory supervision law several times without providing for the release of life-sentenced inmates to mandatory supervision. The Legislature could easily have done this especially since it has expressly provided that some life-sentenced inmates are eligible for discretionary parole. *See generally* Article 508.145, Tex. Gov't Code. All of this indicates that the Legislature does not intend for life-sentenced inmates to be eligible for release to mandatory supervision. *See Boykin,* 818 S.W.2d at 785 (judiciary must give effect to legislative intent of a statute).

S.W.2d at 785–6; *State v. Mancuso,* 919 S.W.2d 86, 87–8 (Tex.Crim.App.1996); *Ex Parte Torres,* 943 S.W.2d 469, 472–3 (Tex. Crim.App.1997). These extra-textual factors include the goal of the legislation, the circumstances under which the statute was enacted, the legislative history, and the consequences of construction. Tex. Gov't Code, § 311.023; *Boykin* at 786; *Mancuso,* 919 S.W.2d at 88.

That mandatory supervision release applies to inmates serving life sentences is evidenced by the facts surrounding the circumstances of the creation of mandatory supervision. The current method of calculating eligibility for release under the parole system was already in place at the time that Senate Bill 152 (S.B.152), the bill which created mandatory supervision, was passed in 1977.[1] When drafting S.B. 152 (now art. 42.12, § 15(c)), the legislature knew that a life sentence was assumed to be sixty years for the purpose of determining parole eligibility. Nowhere in the statute itself or in the legislative history does any proponent of the bill suggest that the method of calculating release to mandatory supervision would be different from that for parole, nor did any legislator propose an alternative method of calculation or indicate that there should be no method of calculation at all.

Contrary to the majority's contention that this Court would "arbitrarily have to substitute some number of years for a life sentence to make it possible to calculate a mandatory supervision release date," the legislature had already arbitrarily substituted sixty years for a life sentence in prescribing the method of calculating a life sentence. If the legislature had not in-

tended the sixty-year maximum to apply to mandatory supervision as well as to parole, there would be some indication of this in the statute itself or in the legislative history. Because there is not, we are left to conclude that the legislature intended to apply to prisoners serving a life sentence the same sixty-year maximum for release under mandatory supervision.

The legislative history of S.B. 152 provides additional support that inmates serving a life sentence are eligible for mandatory supervision. Senator Meier, the author of the bill, stated on the record in a Senate committee meeting that there would be no change in the method of calculating good conduct time, there would be no change in the people who would be eligible, and the classification system would be identical to what was in place before the enactment of mandatory supervision. S.B. 152, March 15, 1977, Tape 3, Side 1. This indicates that the intent was to keep all time calculations for mandatory supervision the same as they were for the parole system already in place at the time the bill was passed.

This result is further supported by the goal of S.B. 152, which can be determined by looking at the legislative intent in passing it. At the first public hearing on S.B. 152 in 1977, Senator Meier explained the goal of mandatory supervision as:

[A]n extension of control or supervision of activities of felons released from prison through the Board of Pardons and Paroles. How it works is that at the present time we have means for calculating, under statutes dealing with the Texas Department of Corrections, good conduct time credit that is allowed. This

---

1. "The Board is hereby authorized to release on parole, with approval of the governor, any person confined in any penal or correctional institution of this state, except persons under sentence of death, who has served 1/3 of the maximum sentence imposed, provided that in any case he may be paroled after serving 20 calendar years." Tex.Code Crim. P., art 42.12, § 15(a).

Bill provide[s] that when a person has reached the time when he would *ordinarily be released at the present,* once you calculate the actual time served and the good time credit that they would have, and it stops that kind of proceeding and says you would get out of jail *at the same time.*

S.B. 152, February 8, 1977, Tape 1, Side 1 (emphasis added). The goal of the mandatory supervision statute was also explained by David Dean, a major proponent of the bill:

This bill does not, actually, does not enhance penalties. *It does not create a longer sentence or a higher penalty range or an add-on type of feature.*

S.B. 152, February 8, 1977, Tape 1 Side 1 (emphasis added).

Two of the major proponents of mandatory supervision specifically stated that the bill did not enhance penalties in any way; thus, the goal of this legislation was not to create a new category of release that would be denied to inmates who are serving a sentence of life rather than one for a specified number of years. The legislative intent was to use the time calculation methods already present in the parole system and to apply them to determine an inmate's eligibility for release under mandatory supervision.

Retired Presiding Judge of the Court of Criminal Appeals Michael McCormick, then representing the Texas District and County Attorney's Association and supporting the passage of S.B. 152, testified that the mandatory supervision bill was seeking to capitalize "upon the spirit of rehabilitation that is present in our Code of Criminal Procedure today." S.B. 152, February 8, 1977, Tape 1 Side 1. Presiding Judge McCormick went on to say that he believed that everyone on the bill's committee was aware "that the guidance that is available through the Board of Pardons and Paroles and the parole supervisors that are in the field [are] more of a benefit to rehabilitation than anything that is done in the Department of Corrections. I think that this bill, in that spirit, accomplishes these means." *Id.*

Since mandatory supervision was passed in a climate focused on rehabilitation and field supervision, it would be absurd to conclude that the legislature intended to deny mandatory supervision release to inmates sentenced to life. With rehabilitation outside the walls of the Department of Corrections as a major thrust behind mandatory supervision, the legislature intended it to apply to all inmates equally, not only to inmates with a sentence of a specific number of years. Rehabilitation through the Board of Pardons and Paroles rather than the Department of Corrections cannot be accomplished unless the inmate is released to the supervision of the Board of Pardons and Paroles. Given these circumstances, there is nothing to indicate that the legislature did not intend mandatory supervision to apply to a life sentence.

In addition, a survey of legislation introduced since the implementation of mandatory supervision indicates that the legislature considers an inmate serving a life sentence eligible for mandatory supervision.[2] Obviously if the legislature had in-

---

**2.** The following bills were introduced to create a sentence of "life without the possibility of parole." None became law. S.B. 869(2)(B), 77th Session, 2001 ("The court, on written request of the attorney representing the defendant, shall ... charge the jury in writing as follows: Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will not become eligible for release on parole *or mandatory supervision.*") (emphasis added)

tended to exclude those serving life sentences from mandatory supervision it would not continue to create and propose laws involving inmates serving life sentences and their release on mandatory supervision. The legislative history, as well as recently proposed legislation, illustrate that the legislature fully intended that inmates serving a life sentence were to be eligible for mandatory supervision.

Finally, the statutory construction of Tex.Code Crim. P., art. 42.12, § 15(c), leads to the conclusion that those serving life sentences are eligible for release on mandatory supervision. The statute itself excludes only one category of inmates, those under sentence of death. Tex.Code Crim. P., art. 42.12, § 15(c). If the legislature had intended to exclude those inmates serving a life sentence, as well as those sentenced to death, it would be logical to assume that the statute would reflect that intent. Nowhere in the statute itself, in any of the floor debates, in any proposed versions of Senate Bill 152, or in any amendment, does the record reflect that the legislature intended to exclude those serving a life sentence from eligibility under the mandatory supervision program.

Based on the legislative history, the stated goal of the mandatory supervision statute, the circumstances under which it was enacted, and consideration of the consequences of construction, I conclude that a prisoner sentenced to serve a term of life is eligible for release on mandatory supervision. In the absence of any alternative calculation method in the statute or in the legislative history, I believe that the sixty-year maximum created by Tex.Code Crim. P., art 42.12, § 15(b), was intended be applied to mandatory supervision as well.

I dissent.

H.B. 77(e)(2), 77th Session, 2001("The court shall charge the jury that if the jury returns an affirmative finding on the issue submitted under this subsection, the court shall sentence the defendant to confinement in the institutional division of the Texas Department of Criminal Justice for life. The court shall further charge the jury that a defendant sentenced to confinement for life under this article is ineligible for release from the department on parole *or mandatory supervision.*") (emphasis added).

H.B. 1619, 76th Session, 1999 ("Amends Section 2, Article 37.071, Code of Criminal Procedure, to require the court to charge the jury that if the jury returns a finding that a sentence of life imprisonment is warranted, the court will sentence the defendant to life in prison and requires the court to further charge the jury that the defendant will be ineligible for release on parole *or mandatory supervision.*") (emphasis added).

H.B. 172, 76th Session, 1999 ("Amends Section 2, Article 37.071, Code of Criminal Procedure, to require the court to instruct the jury that, if the jury affirmatively finds that circumstances warrant a sentence of life imprisonment rather than a death sentence, the court is required to sentence the defendant to confinement for life, and that the defendant sentenced to confinement for life is ineligible for release on parole *or mandatory supervision.*").

H.B. 151, 76th Session, 1999 ("Requires the court to instruct the jury that, if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article (Procedure in a Capital Case), the court is required to sentence the defendant to confinement for life and the defendant sentenced to confinement for life is ineligible for release on parole *or mandatory supervision.*").