# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00225-CV

**Robert King Conway, Jr., Appellant**

**v.**

**Texas Board of Pardons & Paroles, Rissie Owens, Charles Aycock, Juanita Gonzalez, Jose Aliseda, Jr., & Linda Garcia, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN402675, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert King Conway, Jr., an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, filed suit against the Texas Board of Pardons & Paroles, Rissie Owens, Charles Aycock, Juanita Gonzalez, Jose Aliseda, Jr., and Linda Garcia (collectively the "Board"), seeking a declaration that he, as a life-sentenced inmate, is eligible for release to mandatory supervision.[1] The Board moved to dismiss Conway's suit arguing that it was frivolous because it had no basis in law. The district court granted the Board's motion and dismissed Conway's suit with prejudice. On appeal, Conway claims that the district

---

[1] Appellees Rissie Owens, Charles Aycock, Juanita Gonzalez, Jose Aliseda, Jr., and Linda Garcia were all members of the Texas Board of Pardons & Paroles during the time period relevant to this suit.

court abused its discretion by (1) dismissing his case and (2) failing to ensure that a record of any of the underlying hearings was made. Because we hold that the district court did not abuse its discretion, we affirm its order dismissing Conway's suit.[2]

## BACKGROUND

In 1986, Conway was convicted of capital murder and sentenced to life imprisonment. *See Conway v. State*, 740 S.W.2d 559, 559 (Tex. App.—Beaumont 1987, pet. ref'd). In August 2004, Conway filed suit in Travis County district court insisting that his rights under the United States and Texas Constitutions were violated. Specifically, Conway alleged that the statutes pertaining to the release of inmates to mandatory supervision created a constitutional expectancy of early release for inmates serving life sentences.[3] The mandatory supervision statute in effect at the time of Conway's conviction provided:

> A prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the Board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced.

---

[2] Conway has asked the Court to take judicial notice of the holding in *Ex parte Patterson*, 740 S.W.2d 766 (Tex. Crim. App. 1987). Judicial notice is a means by which a court accepts, with proof at trial, a well-known and indisputable fact, not matters of law. Black's Law Dictionary 851 (Bryan A. Garner ed., West 7th ed. 1999). Conway's motion is denied. This Court is aware of the holding in *Ex parte Patterson* and it does not govern the outcome of this appeal.

[3] Conway also filed a motion to proceed *in forma pauperis* and an affidavit of indigence.

2

Act of June 10, 1997, 65th Leg., ch. 347, 1977 Tex. Gen Laws 925, 927 (former mandatory supervision statute).[4] Conway maintained that, under the former mandatory supervision statute, only inmates sentenced to death were ineligible for mandatory supervision. Thus, he claimed that the Board had a ministerial duty to enact a rule that specifies "a number of years that would constitute a life sentence, for mandatory supervision purposes." Conway argued that the Board's refusal to enact such a rule renders him ineligible for release to mandatory supervision because it is impossible to calculate when his time served is equal to the maximum term of his sentence. Consequently, he asserted that the Board's inaction deprived him of his due process liberty interest in release to mandatory supervision.

The Board filed a motion to dismiss Conway's suit as frivolous. The Board argued that Conway's claims had no arguable basis in the law because the court of criminal appeals has held that a "life-sentenced inmate is not eligible for release to mandatory supervision." *Ex parte Franks*, 71 S.W.3d 327, 327 (Tex. Crim. App. 2001). The district court agreed with the Board and concluded that Conway's "claims have no arguable basis in law because both the prior and amended versions of the statute governing mandatory supervision do not confer any constitutionally protected interest on life-sentenced inmates." Therefore, the district court granted the Board's motion and dismissed Conway's suit with prejudice. This appeal followed.

---

[4] The mandatory supervision statute has since been amended and is currently codified as section 508.147 of the government code. *See* Tex. Gov't Code Ann. § 508.147 (West 2004). We note that under the current version of the statute Conway is ineligible for release to mandatory supervision. *See id*. §§ 508.147(a), 508.149(a) (West 2004).

**STANDARD OF REVIEW**

The Inmate Litigation Act (the "Act") applies to civil suits brought by inmates who file suit *in forma pauperis*. Tex. Civ. Prac. & Rem. Code Ann. § 14.002(a) (West 2002) (stating that Chapter 14 "applies only to a suit brought by an inmate . . . in which an affidavit or unsworn declaration of inability to pay costs is filed by the inmate."). Under the Act, a court may dismiss a claim if the court finds that the claim is frivolous. *See id*. § 14.003(a)(2) (West 2002). Section 14.003(b) of the Act lists four factors that the court may consider when determining whether an action is frivolous, including whether the claim has no arguable basis in law or in fact. *Id*. § 14.003(b)(2). We review a trial court's decision to dismiss a lawsuit brought by an inmate under the Act for an abuse of discretion. *Retzlaff v. Texas Dep't of Criminal Justice*, 94 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004).

**DISCUSSION**

In two issues, Conway contends that the district court abused its discretion by (1) dismissing his suit due to it having no arguable basis in law and (2) failing to record the underlying hearings. We will address each issue in turn.

**Did Conway's claims have an arguable basis in law?**

In *Ex parte Franks*, the court of criminal appeals construed the mandatory supervision statute applicable to Conway and explicitly held that "a life-sentenced inmate is not eligible for

4

release to mandatory supervision." 71 S.W.3d at 327. The court of criminal appeals explained, "Under a literal reading of this law, it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life." *Id.* at 328. The court of criminal appeals then noted that "the government has never released life-sentenced inmates to mandatory supervision" and that the statute's legislative history indicated that the legislature did not "intend for life-sentenced inmates to be eligible for release to mandatory supervision." *Id.* at 328 n.1. We are bound by this holding that Conway is not eligible for release to mandatory supervision.

Conway asserts that the Board previously ruled that a life sentence, for release to mandatory supervision purposes, was equal to either twenty or sixty years. Consequently, he argues on appeal that *Ex parte Franks* does not apply to his suit because he is merely seeking to enforce the Board's prior rule. The record does not contain any evidence establishing that the Board has ever promulgated a rule stating how many years of a life sentence an inmate must serve to be eligible for release to mandatory supervision. Therefore, we cannot arbitrarily substitute some number of years for a life sentence to make it possible to calculate a mandatory supervision release date because doing so would require this Court to perform a legislative function. *Id.* at 328.

Conway's argument echoes Judge Johnson's dissent in *Ex parte Franks*. *Id.* at 328-32 (Johnson, J., dissenting). Judge Johnson argued that the "facts surrounding the circumstances of the creation of mandatory supervision" and the legislative history of the senate bill that created mandatory supervision indicate that life-sentenced inmates were eligible for release to mandatory supervision. *Id.* at 329. She stated that the legislature "knew that a life sentence was assumed to be

5

sixty years for the purpose of determining parole eligibility." *Id*. She also pointed out that "[n]owhere in the statute itself or in the legislative history does any proponent of the bill suggest that the method of calculating release to mandatory supervision would be different from that for parole, nor did any legislator propose an alternative method of calculation or indicate that there should be no method of calculation at all." *Id*. She insisted that "[i]f the legislature had not intended the sixty-year maximum to apply to mandatory supervision as well as to parole, there would be some indication of this in the statute itself or in the legislative history." *Id*. Because she could find no such indication, she concluded that a life sentence, for the purpose of calculating a mandatory supervision release date, is sixty years. *Id*. While Judge Johnson's argument has some merit, we are bound by the majority's contrary opinion. Therefore, the district court did not abuse its discretion by concluding that Conway's claim had no arguable basis in law and dismissing the suit. We overrule Conway's first issue.

**Was the district court required to record the underlying hearings?**

In his second issue, Conway argues that the district court abused its discretion by failing to record the underlying hearings. Conway contends that the district court's error improperly deprived him of a reporter's record on appeal. We disagree.

A court reporter is not required to make a record of any hearing unless requested to do so. *See* Tex. Gov't Code Ann. § 52.046(a) (West 2005); *see also Langford v. State*, 129 S.W.3d 138, 139 (Tex. App.—Dallas 2003, no pet.). There is no evidence in the record indicating that Conway ever requested that a court reporter attend and record any of the underlying hearings. Thus,

6

we hold that the district court did not abuse its discretion by failing to ensure that a record was made of the underlying hearings. We overrule Conway's second issue.

## CONCLUSION

Because we hold that the district court did not abuse its discretion, we affirm its order dismissing Conway's suit as frivolous.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed:   August 18, 2006

7