# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00483-CV

**Richard D. Christopher, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-05-003838, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Richard D. Christopher, an inmate in the custody of the Texas Department of Criminal Justice, appeals from the trial court's order dismissing his suit as frivolous. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 14.001-.014 (West 2002). He argues that the court erred in determining that his claims had no arguable basis in law. *See id.* § 14.003. We affirm the trial court's dismissal order.

## Background

To understand Christopher's complaints, a brief history of parole and mandatory supervision law is required. In 1965, the legislature enacted the code of criminal procedure, including article 42.12, which governed parole and probation. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317, 494-97. An inmate was eligible for consideration for parole once he had served one-third of his sentence or twenty years, whichever was less and

including good-time credits. *See* Act of May 19, 1967, 60th Leg., R.S., ch. 659, § 29, 1967 Tex. Gen. Laws 1732, 1745. Until 1977, the law did not provide for mandatory supervision, and those new provisions applied only to offenses committed on or after August 29, 1977. Act of May 30, 1977, 65th Leg., R.S., ch. 347, §§ 1, 7, 1977 Tex. Gen. Laws 925, 927-28, 934. Article 42.12 was later amended to govern community supervision, *see* Tex. Code Crim. Proc. Ann. art. 42.12 (West Supp. 2008), and former article 42.18 was enacted to govern parole and mandatory supervision.

In 1993, former article 42.18 was amended to provide that a person convicted of indecency with a child by contact was not eligible for parole until he had served one-half of his sentence or thirty years, whichever was less. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 6.01, 1993 Tex. Gen. Laws 3586, 3761 (former Tex. Code Crim. Proc. Ann. art. 42.18, § 8(b)); *see also id.* § 4.01, 1993 Tex. Gen. Laws at 3718 (amending art. 42.12, § 3g). A person convicted of indecency by contact was eligible for mandatory supervision once his time served and any credits added up to the maximum sentence imposed. *Id.* § 6.02, 1995 Tex. Gen. Laws at 3761-62. In 1995, the legislature amended former article 42.18 to provide that a person serving a sentence for indecency by contact could only be placed on parole if two-thirds of the members of the Board of Pardons and Paroles voted in favor of parole. Act of May 25, 1995, 74th Leg., R.S., ch. 250, § 2, 1995 Tex. Gen. Laws 2176, 2176. This amendment was made applicable to a defendant who committed an offense before, on, or after the effective date of September 1, 1995. *Id.* § 4, 1995 Tex. Gen. Laws at 2177. In 1997, article 42.18 was repealed, and chapter 508 of the government code was enacted in its place. Act of May 8, 1997, 75th Leg., R.S., ch. 165, §§ 12.01, .22, 1997 Tex. Gen. Laws 327, 415-438, 443.

2

In December 1977, Christopher was convicted as a habitual offender of indecency with a child by contact[1] and several months later, he was sentenced to life imprisonment. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2003). In early 1992, he was released on parole, but his parole was revoked in late 1994 after he exposed himself to a child. He was sentenced with enhancements to twenty years' imprisonment for that new offense. *See id*. § 21.11(a)(2) (indecency with a child by exposure). Christopher went through several parole reviews and each time was given a "set-off."[2] On July 30, 2004, Christopher was reviewed for parole by "a five out of seven board member vote." The Board denied parole, finding that his criminal record showed: a pattern of similar offenses indicating a predisposition to re-offend; one or more offenses indicating a conscious disregard for others; elements of brutality, violence, or conscious selection of vulnerable victims such that he posed a threat to the public; and an unsuccessful earlier placement on probation or supervision. The Board also stated, "OTHER - IOD-SERIAL MOLESTER BPP-DIR.04-02.03 APPLIES." The Board reset Christopher for parole review in three years, in June 2007.

Christopher then filed this suit, seeking declaratory relief and arguing that the Board had violated his rights to be free from cruel and unusual punishment, retroactive laws, and due

---

[1] We (and the State in its brief) take the chronology and facts of this case from Christopher's original petition. Appellant states that on December 6, 1977, he was convicted under penal code section 21.11(a)(1), which governs indecency by sexual contact, and that on March 28, 1978, he was sentenced to life in prison. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2003). In a document attached as an exhibit to his original petition, TDCJ indicated that Christopher was sentenced on March 29, 1978, and that he was first incarcerated on May 22, 1977.

[2] Christopher alleged that through good conduct and "flat calendar time," he "expired his twenty year sentence on December 21, 2002." However, assuming that to be true, Christopher's 1977 life sentence remains. Christopher makes other allegations related to parole review for his 1994 conviction, but because he is also serving the 1977 life sentence, we will only consider his complaints and the Board's actions related to the 1977 sentence.

process violations, and had violated his civil rights. He argued that the application to him of the amendments to the code of criminal procedure and the government code amounted to illegal ex post facto and retroactive laws and that the Board improperly denied him annual parole hearings. *See* Tex. Gov't Code Ann. § 508.141(g) (West 2004) (allowing board to conduct parole review for certain offenders every five years rather than annually). He further argued that the Board improperly labeled him a "serial molester" in violation of his due process rights, and that it violated his due process rights by not applying the rules that were in effect when he was convicted in 1977. Finally, he argued that he had earned a right to release on mandatory supervision.

The State responded with a motion to dismiss, arguing that Christopher's suit was frivolous because his claims had no arguable basis in law. The State asserted that the amendments in question did not impair Christopher's vested rights and were not illegal retroactive or ex post facto laws; that the Board's categorization of Christopher as a "serial molester" did not deprive him of any protected property or liberty interests and thus was not a due process violation; that Christopher was not eligible for mandatory supervision; and that "[m]aking certain classes of prisoners ineligible for release on mandatory supervision based upon the nature of their underlying criminal offense does not offend the notion of equal protection." The trial court granted the State's motion, finding Christopher's claims were frivolous and without arguable legal basis, and dismissed his suit.

On appeal, Christopher simply reasserts the arguments he raised before the trial court in opposition to the State's motion to dismiss.[3] We affirm the trial court's order of dismissal.

---

[3] Christopher's brief does not comply with the rules of appellate procedure in that he has not presented cites to the record and his arguments merely refer to his petition in the trial court. *See* Tex. R. App. P. 38.1. Although Christopher is representing himself pro se, he is still held to the standards we apply to parties represented by counsel. *See Mansfield St. Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). However, in the interests of justice, we will read Christopher's pleadings liberally and address the arguments he raised before the trial court.

**Discussion**

Chapter 14 of the civil practice and remedies code, which applies specifically to inmates who file suit as indigents, and chapter 13, which applies more generally to suits in which affidavits of indigence are filed, are intended to "'prevent abusive or captious litigation' where the *in forma pauperis* litigant 'lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Thompson v. Ereckson*, 814 S.W.2d 805, 807 (Tex. App.—Waco 1991, no writ) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) (discussing chapter 13 prior to enactment of chapter 14). When an indigent inmate files suit, a trial court may dismiss the claims at any time if it finds that any of the inmate's indigence allegations are false, the inmate knew one of the required affidavits or unsworn declarations was false, or the suit is frivolous or malicious. Tex. Civ. Prac. & Rem. Code Ann. §§ 14.002, .003(a).

A claim is frivolous if the "realistic chance" of success is slight, the claim lacks an arguable basis in law or fact, or the claim is "substantially similar" to and arising out of the same facts as one filed earlier. *Id*. § 14.003(b); *see Pedraza v. Tibbs*, 826 S.W.2d 695, 698 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). "To have no arguable basis in law, a claim must be based on 'an indisputably meritless legal theory,' or the facts alleged must rise to the level of the irrational or wholly incredible." *Gill v. Boyd Distrib. Ctr.*, 64 S.W.3d 601, 603 (Tex. App.—Texarkana 2001, pet. denied) (quoting *Neitzke*, 490 U.S. at 327; *Denton v. Hernandez*, 504 U.S. 25, 33-34 (1992)); *see Neitzke*, 490 U.S. at 327 (trial court may "dismiss a claim based on an indisputably meritless legal theory [or] pierce the veil of the complaint's factual allegations and

5

dismiss those claims whose factual contentions are clearly baseless"). "[F]or the claim to have no basis in law, the facts as pleaded must not comprise a cause of action." *Gill*, 64 S.W.3d at 604. "A claim which has no arguable basis in law or in fact does not constitute a cause of action and has no value as a property right." *Pedraza*, 826 S.W.2d at 698. We review a trial court's decision to dismiss under chapter 14 for an abuse of discretion, but when the court dismisses a suit as lacking an arguable basis in law, we will review that determination de novo. *See Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 459 (Tex. App.—Tyler 1999, pet. denied).

In his first two claims before the trial court, Christopher argued that (1) he should not be subject to "extraordinary" votes by the entire Board and instead that his parole reviews should be before three-member panels, and (2) he is entitled to annual parole reviews, not review every five years. Both provisions were amended after Christopher's 1977 conviction.[4] *See* Tex. Gov't Code Ann. § 508.046 (West Supp. 2008) (requiring full Board consideration and two-thirds vote in favor of parole for inmates convicted of capital felony, indecency with a child by contact, or aggravated sexual assault), § 508.141(g) (providing for five-year review intervals for inmate serving offense for sentence listed in section 508.149(a)), § 508.149(a) (West Supp. 2008) (inmate is not eligible for mandatory supervision if convicted of certain offenses, including indecency with a child). He asserted that the application of those amendments to him amounted to illegal ex post facto laws.

---

[4] Indecency with a child was initially not a crime for which an extraordinary vote was required or mandatory supervision was unavailable. *See* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 12.01, 1997 Tex. Gen. Laws 327, 424; Act of May 25, 1995, 74th Leg., R.S., ch. 250, § 2, 1995 Tex. Gen. Laws 2176, 2176.

An ex post facto law (1) punishes as a crime an act previously committed which was innocent when done, (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed, (3) deprives a person charged with a crime of any defense available at the time the act was committed, or (4) alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.

*Holcomb v. State*, 146 S.W.3d 723, 730-31 (Tex. App.—Austin 2004, no pet.); *see Lynce v. Mathis*, 519 U.S. 433, 441 n.13 (1997). A law is an illegal ex post facto law if it is retrospective and disadvantages the offender, meaning it changes "the definition of criminal conduct" or increases the punishment imposed for an act committed before the law's effective date. *Lynce*, 519 U.S. at 441. However, "[t]he prohibitions on the passage of ex post facto laws 'do[] not give a defendant a right to be tried, in all respects, by the law in force when the crime charged was committed.'" *Holcomb*, 146 S.W.3d at 731 (quoting *Gibson v. Mississippi*, 162 U.S. 565, 590 (1896)). We ask whether the change in the law "alters the definition of criminal conduct or increases the penalty by which the crime is punishable" and are "concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred." *Id.*

Thus, we consider whether the amendments effectively lengthened Christopher's sentence. *See Lynce*, 519 U.S. at 442-43. Christopher was sentenced in 1977 to life in prison as a habitual offender for indecency with a child by contact. He later violated his parole by committing another offense of indecency with a child, this time by exposure. He has since been denied parole after every review. Christopher's sentence has not been lengthened, nor any of his vested rights extinguished, by requiring a two-thirds vote by the full Board or allowing the Board to extend the time between parole reviews. *See id.* at 446-47 (amendment did more than remove "mechanism that

7

created an *opportunity* for early release . . .; rather it made ineligible for early release a class of prisoners who were previously eligible"). Christopher asserted that applying the extraordinary vote provision placed a "highly impossible" or "larger burden" on him, but did not explain why other than to opine that it would be easier to convince two Board members than to convince five.[5]

The procedural amendments in question did not increase Christopher's punishment, substantially change the likelihood of his release on parole, or create "a significant risk of prolonging [his] incarceration." *See Garner v. Jones*, 529 U.S. 244, 251-56 (2000) (remanding for consideration of whether change in frequency of parole review "lengthened respondent's time of actual imprisonment"); *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509-10 (1995) (amendment, which applied "only to a class of prisoners for whom the likelihood of release on parole is quite remote," created "only the most speculative and attenuated possibility of . . . increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient"). Thus, neither provision amounts to an illegal retroactive or ex post facto law, and Christopher's first two claims did not present an arguable basis in law. *See Neitzke*, 490 U.S. at 327. Therefore, the trial court did not err in dismissing them.

In his third claim, Christopher argued that the Board illegally applied the label of "serial molester" to him in his 2004 review. He contended that the allegation was not adjudicated, that he was not allowed to present contrary evidence, and that use of the label violates his due

---

[5] In Christopher's appendix to his petition, he included documents showing the Board's votes on five of his parole reviews. In a vote that appears to have occurred in December 1991, two of three panel members voted to place him on parole; it was this parole that was revoked in 1994. In the other votes, the voting members unanimously voted against granting Christopher parole. Not a single Board member has voted in favor of parole since Christopher's parole revocation in 1994.

process rights. We disagree. Christopher has been convicted twice of indecency with a child, once by contact and once by exposure, and his earlier conviction was enhanced to a "habitual offender" status. The Board's use of "serial molester" does not supply a legal basis for a claim for relief.

To trigger due process protections, the Board's use of the label must have deprived Christopher of some liberty or property interest. *See In re M.A.H.*, 20 S.W.3d 860, 864 (Tex. App.—Fort Worth 2000, no pet.). Christopher asserted only that the Board's use of the label was an attempt to prejudice future votes and that the Board's recent use of the label was detrimental to him. He seemed to argue that use of "serial molester" has harmed his reputation in future reviews.

As far as Christopher's petition can be read as complaining about damage to his reputation in future reviews, "[m]ere injury to an adult sex offender's reputation alone has been held to be insufficient to implicate a legitimate liberty interest." *Id*.; *see also Paul v. Davis*, 424 U.S. 693, 712 (1976) (reputation alone is not constitutionally protected liberty or property interest); *Alford v. City of Dallas*, 738 S.W.2d 312, 317 (Tex. App.—Dallas 1987, no writ) (reputation alone is not liberty interest protected by due process clause). As for being given an opportunity to rebut the label, Christopher was at least twice convicted of indecency with a child, and as early as 1977, he was sentenced as a habitual offender. Thus, he cannot rebut the conclusion that he is a repeat sexual abuser of children. Further, in 2004, the Board denied Christopher parole for a number of reasons, finding that he had a record of similar offenses that showed a predisposition to re-offend, conscious disregard for others, brutality, violence, or a conscious choice of vulnerable victims such that he was a threat to the public; that he had been paroled earlier and had re-offended; and that he

was a "serial molester " to whom "BPP-DIR.04-02.03" applied.[6] Christopher did not show that the "serial molester" label was a primary reason for the Board's denial of parole, especially in light of the earlier votes to deny parole that did not refer to the label. Christopher's third claim did not present an arguable basis in law and the facts as he alleged them did not comprise a cause of action. *See Gill*, 64 S.W.3d at 603-04. Thus, the trial court properly dismissed it.

In his fourth claim, Christopher argued that the 1977 mandatory supervision amendments should apply to him. Those amendments stated that an inmate who was not sentenced to death was entitled to mandatory supervision once his calendar time plus earned good-time credits equaled the maximum term to which he was sentenced. *See* Act of May 30, 1977, ch. 347, § 1, 1977 Tex. Gen. Laws at 927-28.

The record reflects that Christopher committed the offense of indecency by contact sometime before May 1977, and Christopher stated in his petition that the pre-1977 law should apply. Thus, at the time Christopher committed the offense, there were no mandatory supervision provisions in place. *See id.* § 7, at 934 (amendments adding mandatory supervision provisions only apply to offense committed on or after August 29, 1977). Until those provisions were enacted, the law only addressed parole, which was entirely discretionary. *See* Act of May 27, 1965, ch. 722, 1965 Tex. Gen. Laws at 494-97 (authorizing Board to place inmate on parole after specified time or fraction of sentence). Further, the court of criminal appeals has held that an inmate sentenced to life

---

[6] Christopher has not explained what "BPP-DIR.04-02.03," apparently a Board policy, provides or how he is harmed by its application to his reviews. His past parole reviews noted that "BPP-POL.96-9-01" applied, and Christopher attached to his petition a copy of that Board policy, which provided that a two-thirds vote of the entire Board membership was required in cases such as Christopher's.

can never be entitled to mandatory supervision because it is "mathematically impossible to determine a mandatory supervision release date on a life sentence." *Ex parte Franks*, 71 S.W.3d 327, 328 (Tex. Crim. App. 2001). Thus, the trial court correctly concluded that Christopher's claim related to the 1977 mandatory supervision provisions was without legal basis. *See id.*; *see also Wottlin v. Fleming*, 136 F.3d 1032, 1038 (5th Cir. 1998) (quoting *Stiver v. Meko*, 130 F.3d 574, 578 (3rd Cir. 1997)) (defendant was convicted before enactment of provisions related to early release upon completion of substance-abuse program and was denied probation under later regulation barring release of inmates with certain prior convictions; later regulation that took away Wottlin's arguable interim eligibility, which was always left to Board's discretion, was not illegal ex post facto law). The court did not err in dismissing Christopher's fourth claim.

### Conclusion

The trial court properly found that all of Christopher's claims lacked arguable bases in law. *See Neitzke*, 490 U.S. at 327. We affirm the trial court's dismissal order.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: December 31, 2008

11