# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 12, 2013

No. 12-40307

Lyle W. Cayce
Clerk

THOMAS ELLASON,

Plaintiff-Appellant

v.

RISSIE OWENS; STUART JENKINS; OLIVER J. BELL,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:11-CV-378

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Thomas Ellason is serving a life sentence for the capital murder of his elderly neighbor during a burglary in 1986. He claims in this Section 1983 civil rights action that he has retroactively and improperly become ineligible for release under mandatory supervision due to a decision of the Texas Court of Criminal Appeals. Additionally, he claims that changes to the Texas parole statutes violate the Ex Post Facto Clause. The district court dismissed the claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40307

DISCUSSION

Because Ellason is seeking a ruling that he is eligible to be considered for parole despite a state court decision to the contrary, and he is not requesting "immediate or speedier release" from custody, his claims are cognizable under Section 1983. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). Proceeding *pro se*, Ellason claims: (1) he did not have fair warning that the penalty for his 1986 crime would be increased by *Ex Parte Franks*, 71 S.W.3d 327 (Tex. Crim. App. 2001); and (2) the amended parole statutes violate the Ex Post Facto Clause. Although Ellason's briefing is minimal, it is sufficient to apply the principle that we construe *pro se* arguments liberally. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010).

A.    *The* Franks *Decision and "Fair Warning"*

We review *de novo* the legal issue of whether Ellason can constitutionally be made subject to a state court decision handed down after his offense that those sentenced to life imprisonment in Texas are ineligible for mandatory supervision. *Meza v. Livingston,* 607 F.3d 392, 398 (5th Cir. 2010). Ellason contends the decision in *Franks* was an "unexpected and indefensible" construction of the law and thus violated due process.

In 1986, when Ellason committed the murder, Texas law provided that an inmate "who is not on parole, except a person under sentence of death, shall be released to mandatory supervision . . . when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." TEX. CODE CRIM. PROC. art. 42.12, § 15(c) (West 1987); art. 42.18, § 8(c) (1987) ("Text of (c) effective until September 1, 1987 "). That statute makes no specific reference to inmates with life sentences.

2

No. 12-40307

In 2001, the Texas Court of Criminal Appeals held that "a life-sentenced inmate is not eligible for release to mandatory supervision" under Texas law. *Franks*, 71 S.W.3d at 327 (citing art. 42.12, § 15(c) (1981)). Franks committed his crime in 1981, but the court said the statute had not substantively changed since that time. *Id.*; *see* art. 42.12 § 15(c) (1987); *see also* TEX. GOV'T CODE ANN. § 508.147 (West 2012). The form of the statute applicable to Ellason, who committed his crime in 1986, similarly would not have changed meaningfully by 2001 when *Franks* was decided. The court noted that Texas never had actually released those sentenced to life imprisonment into mandatory supervision. *Franks*, 71 S.W. 3d at 328 n.1. The court determined that "it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life." *Id.* at 328. The court declined "arbitrarily . . . to substitute some number of years for a life sentence." *Id.*

This court soon relied on *Franks* to reject the contention that inmates sentenced to life were entitled to mandatory supervision. *Arnold v. Cockrell*, 306 F.3d 277, 278-79 (5th Cir. 2002). We held that a Texas inmate serving a life sentence was not eligible for release under the mandatory supervision statute and had no constitutionally protected interest in the loss of good-time credits. *Id.* at 279. We pointed out there had been some disagreement among federal district courts in Texas about whether the statute applied to those with life sentences, but in *Franks* the Texas court resolved the issue by holding "neither the 1981 statute nor the current statute permitted release for prisoners sentenced for life." *Id.* Our interpretation of Texas law in *Arnold*, which we

3

No. 12-40307

repeat here, is that at least since 1981, the relevant statute did not make mandatory supervision available to those with life sentences.

Despite *Arnold*, Ellason seeks relief based on the Supreme Court's statement that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process," and due process requires fair warning of what is prohibited conduct and the penalties for it. *Rogers v. Tennessee*, 532 U.S. 451, 456-57 (2001). When "a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, the construction must not be given retroactive effect." *Id.* at 457 (quotation marks, alterations, and citation omitted).

*Rogers* explained that the due process concept of fair warning seeks to avoid "attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459. There is no caselaw or other authority we have discovered that indicates *Franks* made a change, much less one that was "unexpected and indefensible by reference to the law which had been expressed prior" to Ellason's criminal conduct. Perhaps there was uncertainty prior to *Franks*, but there was not a clear availability of mandatory supervision that *Franks* then withdrew.

Even had *Franks* effected some change to existing law, we conclude, as did a previous panel of this court, that there is no authority for the proposition "that a retroactive judicial interpretation effecting a change in sentencing, parole, probation, or mandatory supervised release law that disadvantages a prisoner gives rise to a Due Process violation." *Casterline v. Thaler*, 494 F. App'x 500, 502 (5th Cir. 2012) (unpublished). It is true that *Casterline* concluded that prior to *Franks*, those sentenced to life in prison were eligible for release to mandatory supervision. *Id.* That is why the court used terminology of "a retroactive judicial

No. 12-40307

interpretation" that changed eligibility. We do not interpret *Franks*, though, to have changed anything. What *Franks* did was to make clear that mandatory supervision is unavailable to life-sentenced inmates, thus explaining what the mandatory supervision statute on its face did not explain (i.e., how to calculate eligibility under a life sentence).

There is no due process problem in denying Ellason eligibility for mandatory supervision.

B.    Ex Post Facto *Claims Concerning Parole Statutes*

We construe four of Ellason's arguments on appeal as *ex post facto* claims regarding parole eligibility. The parties agree that those with life sentences are not automatically excluded from consideration for parole. Ellason raised *ex post facto* claims in the district court, but the district court did not address them. Because the legal issues were sufficiently presented to the district court, though not ruled upon, we review these claims *de novo*. *See United States v. Young*, 585 F.3d 199, 202 (5th Cir. 2009).

In Texas, inmates serving life sentences are eligible to be considered for discretionary parole. *Franks*, 71 S.W.3d at 328 n.1. Retroactive changes to parole laws may, in some cases, violate the Ex Post Facto Clause. *Garner v. Jones*, 529 U.S. 244, 249-50 (2000). In evaluating an alleged *ex post facto* violation, the reviewing court must analyze the level of risk that an inmate's prison stay will be longer because of a change in the law that applies retroactively. *Id.* at 255. A new procedure that creates only a "speculative and attenuated risk of increasing" the punishment does not violate the Ex Post Facto Clause. *Hallmark v. Johnson*, 118 F.3d 1073, 1078 (5th Cir. 1997). "Rules affecting eligibility for parole may violate the clause, but discretionary rules

affecting suitability do not." *Wallace v. Quarterman*, 516 F.3d 351, 355 (5th Cir. 2008).

First, Ellason argues that he has been "singled out for a risk assessment that must be developed before a [Texas Board of Pardons and Paroles ("Parole Board")] member may vote on his parole." Ellason does not identify any specific guideline or explain how any guideline creates even a "speculative and attenuated risk of increasing the measure of punishment." *Hallmark*, 118 F.3d at 1078. Even when construed with the utmost liberality, this vague and conclusional assertion does not allege a cognizable constitutional violation. *See Calif. Dep't of Corr. v. Morales*, 514 U.S. 499, 508-09 (1995).

Second, Ellason asserts that the district court mistakenly applied a decision that has since been overruled. That is incorrect, as the district court did not address his *ex post facto* claims at all.

Third, Ellason refers to "saving clauses" that preclude the retroactive application of parole statutes. He abandons this argument by failing to argue it in his brief. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

Finally, Ellason contends this court remanded similar claims in a previous decision. *See Hunter v. U.S. Parole Comm'n*, 308 F. App'x 856 (5th Cir. 2009). There, the district court summarily dismissed a prisoner's contentions that revised federal parole statutes were applied in violation of the Ex Post Facto Clause. *Id.* at 858-59. This court remanded because "[t]he district court should have compared the guidelines at issue with the old guidelines to determine whether there were facial distinctions and whether their applications as to Hunter yielded different results." *Id.* at 859.

No. 12-40307

In this case, the district court did not consider Ellason's Ex Post Facto Clause claims at all. Nonetheless, remand is not warranted because Ellason's brief falls far short of identifying a cognizable constitutional claim. Even if his district court pleadings are considered, he shows no more than a speculative possibility that the changes might affect the Parole Board's assessment of his suitability for parole. *See Simpson v. Ortiz*, 995 F.2d 606, 610 (5th Cir. 1993). None of Ellason's *ex post facto* claims concerning parole statutes warrant relief.

AFFIRMED.